HELENA GAS COMPANY *v.* ROGERS.

Opinion delivered April 29, 1912.

1. NEGLIGENCE—PROXIMATE CAUSE QUESTION FOR JURY.—Ordinarily, the question of proximate cause is for the jury.  (Page 62.)

2. SAME—PROXIMATE CAUSE.—A primary cause may be the proximate cause of an injury though it may operate through successive instruments.  (Page 62.)

3. SAME—PROXIMATE CAUSE.—To warrant a finding that an act of negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligent act, and that it ought reasonably to have been foreseen in the light of the attending circumstances; whether it was actually foreseen or not.  (Page 62.)

4. SAME—PROXIMATE CAUSE.—Where plaintiff's intestate was killed by his horse shying at some object in the street and thus falling into an unguarded excavation in the street made by defendant, thereby throwing intestate and crushing his skull, the question whether the excavation was the cause of intestate's death was for the jury.  (Page 63.)

5. SAME—CONCURRING CAUSE.—Where an injury would not have occurred but for defendant's negligence, the proof of a concurring cause does not eliminate defendant's liability.  (Page 63.)

6. INSTRUCTIONS—REPETITION.—It was not error to refuse a requested instruction which was covered by the instructions given by the court.  (Page 64.)

7. SAME—REFUSAL OF REQUEST.—It was not error to refuse a requested instruction which, though technically correct, was calculated to confuse, instead of to enlighten, the jury.  (Page 64.)

8. DEATH—MEASURE OF DAMAGES.—In an action for a wrongful death, brought for the benefit of decedent's estate, the amount of damages recoverable is not affected by the widow's life expectancy, but in an action for the benefit of the surviving wife her recovery is limited to her pecuniary loss during her life expectancy.  (Page 64.)

9. TRIAL—EXPECTANCY OF LIFE—APPEARANCE OF PERSON.—In an action for the benefit of a surviving wife to recover damages for her husband's wrongful death, her expectancy of life might be reckoned by the jury from her appearance before them, in the absence of other proof.  (Page 65.)

10. EVIDENCE—PRESUMPTION—EXPECTANCY OF LIFE.—In an action for the benefit of a surviving wife to recover damages for the wrongful death of her husband, it will not be presumed on appeal that her expectancy of life is equal to or greater than his.  (Page 65.)

11. DEATH—DAMAGES—INSTRUCTION.—In an action for the benefit of a surviving wife to recover for her husband's wrongful death, where there was

no evidence showing her age or life expectancy, the failure to give a requested instruction to the effect that the pecuniary loss of the widow is limited to her life expectancy was prejudicial error. (Page 65.)

Appeal from St. Francis Circuit Court, *Hance N. Hutton*, Judge; reversed.

*Moore & Vineyard, Mann & Morrow* and *Norton & Hughes*, for appellant.

1. The peremptory instruction to find for the defendant should have been given. The negligence of appellant, if any, was not the proximate cause of the injury, the fright of the horse being an efficient intervening cause. 87 Ark. 576; 76 Ark. 530; 86 Ark. 289; 69 Ark. 402; 89 Ark. 59; 53 Mich. 278; 124 Fed. 113; 47 Am. Dec. 578.

The peremptory instruction should have been given for the further reason that in removing the pole at the request of the city, appellant was acting in the capacity of the servant of the city merely, and was under no liability that the city would not have been under had it moved the pole. 69 Atl. 636; 74 Ark. 519; 73 Ark. 447; 57 Ark. 84; 49 Ark. 139; 145 Pa. St. 220; 27 Am. St. Rep. 685.

2. The court erred in refusing to give instruction 4 requested by appellant. The jury should have been instructed as to the meaning of the term "proximate cause," especially since the contention of the plaintiff was that the hole, and of the defendant that the accident to and fright of the horse, was the proximate cause. 97 Ark. 58.

There was no proof of the age and expectancy of the widow. Instruction 10 was correct and should have been given. 121 Fed. 420; 63 Miss. 291; 48 So. 735; 15 So. 876, 884; 3 Sutherland on Damages 283; 51 Ark. 509.

*P. R. Andrews*, for appellee.

The evidence is clear that the injury would not have occurred without the existence of the hole and the fact that it was left in an unguarded condition. Such being the case, the failure of the appellant to use ordinary care to keep the hole in a safe condition was the proximate cause of the injury. 54 Ark. 131, and cases cited.

The fact that a free light was hung on the pole for the city, and that the city engineer superintended the placing of

poles and the making of the excavation under the power reserved in the granting of the franchise, does not relieve the gas company from liability. 79 Ark. 490; 56 Ark. 132; 54 Ark. 131; 46 Ark. 207; 68 Ark. 291; 86 Ark. 36.

Where two or more acts of negligence concur in producing an injury, each of said acts is, in a legal sense, a proximate cause. 61 Ark. 301; *Id.* 141; 73 Ark. 112; 75 Ark. 133; 79 Ark. 498; 86 Ark. 548.

KIRBY, J. This is the second appeal of this case, and a statement of it and the opinion on the first appeal will be found in 98 Ark. 413 (*Helena Gas Co.* v. *Rogers*).

The case was reversed on the former appeal for the error of giving and refusing instructions requiring a higher degree of care of the gas company in guarding excavations made by it in the streets of a city to protect the public from injury therefrom than the law warranted, and upon the last trial, upon which the facts were developed substantially as upon the first, the court properly instructed the jury upon the measure of care required by the gas company, and refused, over its exceptions, to give its request for a peremptory instruction and instructions numbered 4 and 10, as follows:

"4. You are instructed that the burden is upon the plaintiff to establish to your satisfaction, by a preponderance of testimony, that the negligence charged against the defendant was the proximate cause of the injury to plaintiff's intestate. And, in order to establish proximate cause, it is necessary in the first place that there be a direct connection between the negligent act and the injury, and that such act be the direct cause which set in motion the circumstances leading up to the injury, and which, in natural and continuous sequence, unbroken by any new or intervening cause, produced the injury; and, unless you are so convinced, it is your duty to find for the defendant."

"10. The measure of damages is also affected by the expectancy of the widow, and, in addition to what has been given you on the measure of damages, you are also instructed that the pecuniary loss of the widow is limited to her life expectancy, as you may find from the proof."

The jury returned a verdict against it and from the judgment appellant brings this appeal.

It is urged, first, that the court erred in refusing to give a peremptory instruction for appellant, it being contended that its negligence, if any there was, was not the proximate cause of the injury.

The question of proximate cause, as this court has already said, is not one of science or legal knowledge, and is a question ordinarily for the jury, to be determined as a fact from the particular situation, in view of the facts and circumstances surrounding it. The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments. *Pulaski Gas Light Co.* v. *McClintock*, 97 Ark. 584. It is generally held, however, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances. *Milwaukee, etc., Ry. Co.* v. *Kellogg*, 94 U. S. 476, 24 L. Ed. 256; *Gage* v. *Harvey*, 66 Ark. 68; *St. Louis, I. M. & S. Ry. Co.* v. *Bragg.* 69 Ark. 402. It is not necessary that the effect of the act or omission complained of would in all cases, or even ordinarily, be to produce the consequences which followed, but it is sufficient if it is reasonably to be apprehended that such an injury might thereby occur to another while exercising his legal right in an ordinarily careful manner, or, in other words, if the act or omission is one which the party ought, in the exercise of ordinary care, to have anticipated as likely to result in injury to others, then he is liable for any injury proximately resulting therefrom, although he might not have foreseen the particular injury which did happen. *Pulaski Gas Light Co.* v. *McClintock, supra; Foster* v. *Chicago, R. I. & P. Ry. Co.*, 127 Iowa 84, 4 Am. & Eng. Ann. Cas. 150; *Baltimore & O. Rd. Co.* v. *Slaughter*, 167 Ind. 330, 7 L. R. A. (N. S.) 597.

There was a disputed question of fact as to the care exercised by appellant in guarding the excavation made by it, to protect persons rightfully using the streets and sidewalks from injury on account thereof, and the question whether it had exercised the care required by law, as well as whether its negligence was the proximate cause of the injury, were properly submitted to the jury.

It was within the jury's province to determine, from the facts and circumstances surrounding the accident and injury, whether it was the natural and probable consequence of the negligence of the defendant in digging the hole and leaving it unguarded, and they determined it against appellant under instructions from the court that fairly submitted the question.

It is argued that appellant could not possibly have contemplated the injury that did occur because of the negligent failure to keep the excavation covered, but it was not necessary that it should have foreseen the particular injury in order to be liable, but only that such an injury, or an injury of some kind, might occur to another while in the exercise of his legal rights in an ordinarily careful manner because of such act.

It is also well known that horses are more or less prone to scare and shy at different objects along the streets and deflect from the beaten tracks, and public highways should be built and maintained in such a manner as to provide for the ordinary shying and starting of horses and the consequent deviation, as said in *St. Louis, I. M. & S. Ry. Co.* v. *Aven,* 61 Ark. 141.

It is no defense to appellant's negligence to say that the injury would not have occurred if the horse had continued along the street and had not shied and run away, for it would not have occurred had it exercised the proper care to protect the traveller against just such an incident which was likely to occur. There was no intermediate cause disconnected from the primary fault and self-operating which produced the injury, and its negligence was the proximate cause of it; for, even if the running away of the horse be considered a concurring cause, it does not prevent the liability of the appellant to answer for the negligence but for which the injury would not have occurred. *Pulaski Gas Light Co.* v. *McClintock, supra; St. Louis, I. M. & S. Ry. Co.* v. *Aven,* 61 Ark. 141; *Strange* v. *Bodcaw Lumber Co.,* 79 Ark. 490; *Waters-Pierce Oil Co.* v. *De Selms,* 212 U. S. 177, 53 L. Ed. 463; *Pugh* v. *Texarkana Traction Co.,* 86 Ark. 36; *S. W. Tel. & Tel. Co.* v. *Myane,* 86 Ark. 548; *The G. R. Booth,* 171 U. S. 450.

The jury were told, that, if appellant's negligence was one of the concurring proximate causes of the injury, it would

be liable therefor, and the only duty incumbent upon it in the making of the excavation was to use ordinary care to prevent an injury liable to result therefrom; and from all the instructions the jury understood that the appellant had the right to dig the hole as it did for the erection of the post, and was only bound to the exercise of ordinary care to keep and maintain it in a proper and safe condition to prevent injuries that were likely to happen as the natural and probable consequence of it being left uncovered, and there was no error in refusing requested instruction numbered 4.

If it be conceded that said instruction was a correct technical definition of proximate cause, it would not have benefited the jury in arriving at a proper decision of the issue before them, since, from it, they could not readily have understood that if the injury was the natural and probable consequence of the act of negligence complained of, under the circumstances of the case, such as might and ought to have been foreseen by the appellant as likely to occur or flow from said act, then it was the proximate cause for which it would be liable.

The only effect of instruction numbered 4, if given, would have been to confuse, instead of enlighten, the jury, and no prejudicial error was committed in refusing it.

As to requested instruction numbered 10, we have concluded that it is a correct declaration of the law.

Under our statute and decisions, two causes of action may arise out of the death of a person caused by the wrongful act of another, the one for the benefit of the estate of deceased and the other for the benefit of the widow and next of kin; the suits are prosecuted in different rights, and the damages are given upon different principles to compensate different injuries, and the next of kin are only entitled to damages for the pecuniary loss occasioned by the death alone. Sections 6289 and 6290, Kirby's Digest; *Railway* v. *Davis*, 53 Ark. 117.

This being true, the measure of damages for the estate's benefit assessed upon the first count or paragraph of the complaint could not, in any event, have been affected by the widow's life expectancy; but since the measure of damages in the action for the pecuniary loss resulting from decedent's death was for the exclusive benefit of the widow in this case,

it was affected by her life expcctancy, as said instruction correctly told the jury. She was not entitled to recover damages for pecuniary loss during the entire life expectancy of her husband, if her own life expectancy was not for as long or a longer period than his. In other words, no pecuniary loss because of the death of the husband could result to a wife after the end of her life expectancy when the law presumes she would be dead.

The courts have frequently held that the damages are to be measured by the shortest expectancy of life, that is, if the person entitled to recover was not expected to live as long as the one for whose death the cause of action arose, then the expectancy of life of the person entitled to compensation would control. *Fordyce* v. *McCants,* 51 Ark. 509; *The Dauntless,* 121 Fed. 420; *Illinois Cent. Rd. Co.* v. *Crudup,* 63 Miss. 291; *Miss. Cotton Oil Co.* v. *Smith,* 48 So. 735; *Duval* v. *Hunt,* 15 So. 876.

It is true these are all cases in which the persons recovering damages were parents injured by the death of a child whose expectancy of life, of course, was longer than theirs, and we have found no case of like kind of a suit for pecuniary injury to the widow for the death of her husband, but the principle is the same in any event, because she could not be pecuniarily damaged because of the death only during her life, and should not receive compensation for the injury for a longer period than she was expected to live.

There was no testimony showing the age of the widow nor her life expectancy, and we have not been able to determine whether the verdict is larger than it ought to be on that account.

If the instruction had been given, the jury might have reckoned the expectancy of life of the widow from her appearance before them, in the absence of other proof; but we can not presume that her life expectancy was equal to or greater than that of the deceased and that no prejudice resulted from the failure to give an instruction which properly defined the measure of damages on that cause of action considered with the instructions given on that point.

For this error, the judgment is reversed and the case remanded for a new trial on the cause of action for pecuniary

loss to the next of kin, and affirmed as to the judgment on the cause of action for the benefit of decedent's estate.

McCULLOCH, C. J., (dissenting). It is undoubtedly correct to say that under statutes patterned after Lord Campbell's Act the amount to be recovered must be limited to actual compensation for the injury sustained, and that the extent of the injury must be reckoned within the limits of the joint expectancy of the two lives—that of the person whose death has been caused by the wrongful act complained of and the surviving person or persons pecuniarily injured by the death. This, for the reason that the object of the law is to give compensation to the surviving dependent by the loss of the benefits which he or she would have received from the decedent but for the latter's premature death, and the measure of damages is therefore the present value of the expected benefits, the bounds of which are necessarily marked by the shortest expectancy of the two lives. The rule has, in reported cases, been applied only where it was a suit by the father to recover damages on account of the death of the child. No case is found where it was applied in a suit by the widow to recover damages which arose on account of the death of her husband. I have no doubt, however, of the correctness of its application in such a suit when the state of the proof makes it material. Where the proof shows that the widow's expectancy is shorter than that of the husband at the time of his death, the jury ought to be instructed to compute the value of benefits which could reasonably have been anticipated within her expectancy of life. What I dissent from now is the application of that rule to a case where there is no proof that the widow's expectancy is shorter than that of the deceased husband. The testimony is silent on that point, and the expectancy of the husband alone was proved. Ordinarily, the presumption is reasonable and, in the absence of proof to the contrary, ought to be indulged, that the life expectancy of husband and wife are approximately the same. Instances to the contrary are exceptional, and the trial of lawsuits of this character ought to proceed upon that presumption until facts are proved overturning it. A widow ought not to be required to prove affirmatively her age and the state of her health so as to establish her expectancy of life. The burden should be on the other party to establish facts which

fix her expectancy shorter than that of her husband, and no instruction on that subject is called for unless some proof on the subject has been adduced.  It is too much of a stretch to say that the jury might find from the appearance of the widow in their presence that her life expectancy is shorter than that of her husband and ought to be told to consider that expectancy.  The liability of appellant has, under correct instructions of the trial court, been established by the verdict of the jury, and the amount of the damages assessed is very moderate. The assessment of the damages has not been assailed as excessive.  It is scarcely within the range of reasonable probability that appellant was prejudiced by the court's refusal to give the requested instruction on this subject.  My firm conclusion is, therefore, that the case should be affirmed on both branches.