JEFFERY *v.* GORDON.

5-2900                                   365 S. W. 2d 128

Opinion delivered February 25, 1963.

*Holt, Park & Holt,* for appellant.

*Shelby R. Blackmon, Wm. A. Eldredge, Jr.,* and *George E. Pike, Jr., Mehaffy, Smith, Williams, Friday & Bowen,* for appellee.

JIM JOHNSON, Associate Justice. This action was brought by appellant, Elmer Jeffery and John W. Mc-Cracken, d/b/a J. W. McCracken, Contractor, against appellees Norman N. Graves and Warren L. Graves, d/b/a Graves Brothers, Contractors, and C. D. Gordon, Contractor, to recover damages to a highway overpass which appellant alleged was proximately caused by the negligence of appellees in parking a truck-load of baled hay beneath the steel and concrete span. A fire from unknown origin burned the hay and the heat thus generated, warped and damaged the overpass. Appellant was required to repair the damaged portion of the overpass before it could be accepted by the Arkansas Highway Department.

At the close of appellant's evidence, appellees' motion for a directed verdict was granted by the trial court. From that verdict comes this appeal.

By way of prelude, we find ourselves in agreement with Professor William Prosser who commented on the causation factor in his learned treatise on the law of tort: ''There is perhaps nothing in the entire field of law which has called forth more disagreement, or upon which opinions are in such a welter of confusion.'' Prosser, Torts 218 (2d ed.). Our own reported cases are full of attempts to fix and define within certain limits a comprehensible meaning to the term ''proximate cause'', but in the final analysis the term is so elusive that we are compelled in each case which reaches us to consider it upon its own merits in the light of all the attending circumstances it presents. This case is no different.

The law is well settled in this state that before one can be held liable for an alleged negligent act, that act must be the proximate cause of the injury complained of,

and also be of such a nature that the consequent injury should be one which, in the light of attending circumstances, a person of ordinary foresight and prudence would have anticipated. *Arkansas Valley Trust Co.* v. *McIlroy,* 97 Ark. 160, 133 S. W. 816, 31 L.R.A., N.S. 1020.

The first question we are asked to resolve is: did appellant offer evidence that the act of parking the truck of baled hay beneath a steel and concrete structure constituted negligence, and if so, was that act the proximate cause of appellant's injury? The law is equally well settled that proximate cause must be shown. *Meeks* v. *Graysonia, N. & A. R. Co.,* 168 Ark. 966, 272 S. W. 360. Assuming without deciding that the act of parking the hay was an act of negligence we must consider the second portion of the question. Did appellant offer proof of any nature that this act was the proximate cause of the injury? We think the answer is found in appellant's entire offer of proof on causation, which we set out in full from the record:

"Direct Examination

Q. State your full name to the jury.

A. Bill Struebing.

Q. By whom are you employed?

A. Arkansas State Police.

Q. What division are you in?

A. Fire Marshal Section.

Q. How long have you been in that section?

A. Since it was transferred to the State Police in 1955.

Q. You are head of that section?

A. Yes.

Q. Have you received any particular training in that field as fire marshal work?

A. I have attended schools in Oklahoma, A & M now Oklahoma University and I have attended Purdue University and University of Texas.

Q. During these courses of studies have you had occasion to study the sources of heat and fire potential of hay and straw?

A. Yes sir.

Q. During the five years you have been chief of the fire marshal section have you had occasion to make investigations and studies of fires and fire with relationship to burning of buildings?

A. Yes we have investigated fires in hay barns and structures of that type.

Q. Can you state from your studies and from your experience whether or not hay is said to be highly inflammable substance?

A. Yes it is classified as such.

Q. Will you state whether or not straw is classified as such?

A. General classification would be vegetation such as hay and straw, broom corn, tobacco and crops of that nature.

Q. They all fall under the same general category?

A. Yes.

Q. Will you state whether or not under certain given conditions straw might be combustible?

A. You are talking about spontaneous ignition. If the moisture content is over thirty there is a possibility of fermentation which causes heat and if allowed to generate over a period of time it can generate enough heat to where fire will occur.

Q. This can happen under certain given situations as far as straw is concerned?

A. Hay and straw that classification with the moisture content.

Q. You can not make a determination on investigation unless you make an extensive study of the product at a given time?

A. Yes as to humidity and things of that nature.

Q. With reference to the discussion we had concerning this fire, you were not called in to investigate this matter?

A. No sir. That was not brought to our attention.

Cross Examination

Q. Will you explain what is hay?

A. Hay, in my opinion, would be a crop that could be fed to cattle.

Q. What is straw?

A. Straw is a byproduct of a grain crop after the grain has been removed.

Q. Is there any difference in your opinion whether hay or straw as to the combustibility?

A. After the heat is built up they both burn with rapid combustion.

Q. What do you mean by rapid combustion?

A. Well rapid, rapid oxygenation after a certain temperature is reached the fuel involved in this area will rapidly ignite and a rapid fire spread will be the result.

Q. Is there any difference in the combustibility of hay and straw?

A. Again the moisture content would have some bearing, that and humidity.

Q. As far as the two, when the moisture content is the same is there any difference in the combustibility?

A. It would take less heat to ignite this leaf than straw if the heat temperature were raised to that degree both would ignite possibly at the same rate.

Witness excused."

From the foregoing testimony, which was the only offer by appellant as to causation, all the court and jury were told is that under certain circumstances and conditions hay is subject to spontaneous combustion, or, as the witness said, spontaneous ignition. The court and jury were not told that these same or similar circumstances existed at the place and time the hay became ignited from a cause appellant concedes is unknown and which appellant argues must be left to conjecture.

Causation is a fact as much as negligence is a fact. It must be proved. *Meeks* v. *Graysonia N & A R Co.,* *supra.* We unhesitatingly reject any suggestion that conjecture and fact are on an equal plane. *Biddle* v. *Jacobs,* 116 Ark. 82, 172 S. W. 258. To avoid conjecture in the instant case, appellant should have offered some substantial evidence, however slight, that the same or similar circumstances and conditions within the hay itself (such factors as suggested by appellant's expert witness, *i.e.,* moisture content, humidity, etc.) constituted such a hazard that appellees could have or should have foreseen the consequences of the act of parking that load of hay at that place and at that time, or some other causation traceable to appellees.

It is within common knowledge of mankind that hay is combustible. But it is not within common knowledge of mankind what circumstances and conditions must exist to cause hay to burst into flame from heat it has generated. Appellant produced adequate evidence to show the necessary circumstances and conditions which could cause hay to ignite spontaneously. But after giving appellant's evidence its strongest probative force and every legitimate inference that may be adduced from the testimony and exhibits, *St. Louis S. R. Co.* v. *Britton,* 107 Ark. 158, 154 S. W. 215; *Cousins* v. *Cooper,* 232 Ark. 605, 339 S. W. 2d 316, there is a total failure of evidence to show that these circumstances existed or that appellee knew or should have known that these existed at the time and place of the act for which appellant complains.

It therefore follows that failure by appellant to submit evidence to place the fact of causation into dispute

created no question of fact for a jury to decide. The trial court properly ordered a directed verdict. To hold otherwise could make hay handlers insurers as a matter of law.

The second question, which involves the relationship of master and servant between the appellees, has now become moot.

Affirmed.

ROBINSON, J., dissents; HOLT, J., not participating.

SAM ROBINSON, Associate Justice (dissenting). The Court instructed the jury to find for the defendants, appellees.

On appeal there are two questions to be decided. First, was the evidence sufficient to take the case to the jury on the question of whether appellees were negligent in leaving a load of hay in such proximity to the bridge that the bridge was damaged when the hay caught fire. The majority has assumed that the evidence is sufficient to prove negligence in that respect.

The second question is whether the evidence is sufficient to take the case to the jury on the question of proximate cause. The majority has held as a matter of law that the conceded negligence was not the proximate cause of the damage to the bridge. I maintain that it was a question for the jury as to whether appellees' negligence was the proximate cause of the damage.

In discussing proximate cause, Professor Prosser says: "In cases where reasonable men might differ—which will include all but a few of the cases in which the issue is in dispute at all—the question is one for the jury." *Prosser on Torts,* Second Ed., P. 281.

This Court said in *Federal Compress & Warehouse Co.* v. *Free,* 190 Ark. 969, 82 S. W. 2d 253: "The question of proximate cause, as this court has already said, is not one of science or legal knowledge, and is a question ordinarily for the jury, to be determined as a fact from the particular situation, in view of the facts and circum-

stances surrounding it. *The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments . . . Several incidents may occur in regular or natural sequence, but it is not necessarily true that the primary cause thereof is, on that account, not the proximate cause of the injury suffered."* (Emphasis ours.) To the same effect is *Pulaski Gas Light Co.* v. *McClintock,* 97 Ark. 576, 134 S. W. 1199.

In *Dixie Furniture Co.* v. *Deason,* 226 Ark. 742, 293 S. W. 2d 706, the furniture company moved a stove and failed to cap a gas pipe. One of the issues in the case was whether the failure to cap the pipe was the proximate cause of an explosion. This Court said: "Whether the failure to put a cap on the pipe was the proximate cause of the injuries was a question for the jury."

In *Booth & Flynn* v. *Price,* 183 Ark. 975, 39 S. W. 2d 717, this Court said: "It is claimed, however, by counsel for appellants that this was not the proximate cause of the injury of appellee. They insist that his own conduct in going into the flames to turn off the stopcock near the main tank was an intervening cause, and that therefore appellants are not liable. The general rule is that what is the proximate cause of an injury is a question for the jury. It is to be determined as a fact in view of the circumstances attending it." A judgment for the plaintiff was affirmed.

If reasonable men might differ as to whether an act or omission is the proximate cause of damages sustained, that question should be submitted to a jury. It is said in *Coca Cola Bottling Co.* v. *Shipp,* 173 Ark. 130, 297 S. W. 856; "In every case where fair-minded men would honestly differ about a question, that fact makes it a question for the jury and not for the court."

It being shown beyond any possibility of doubt that proximate cause is a jury question where the minds of reasonable men might differ, it only remains to be pointed out that the evidence in this case is such that reasonable men might differ on that question.

In the majority opinion it is stated: "It is within common knowledge of mankind that hay is combustible." Mr. Bill Struebing of the State Fire Marshal's office, testified that hay is highly inflammable and classified as such. In fact, it is so inflammable that it will spontaneously ignite under certain conditions.

In *Gibson Oil Co.* v. *Sherry,* 172 Ark. 947, 291 S. W. 66, an employee of the oil company negligently allowed a mixture of gasoline and water to run down a gutter in the street. Sherry, standing on the curb, lit his pipe and threw the match into the gutter, igniting the gasoline and the resulting fire destroyed Sherry's automobile. A judgment for Sherry was affirmed. Of course, before the jury could find for the plaintiff, they had to find that the act of allowing the gasoline to run into the street was a proximate cause of the damages.

In *Eisenkramer* v. *Eck,* 162 Ark. 501, 258 S. W. 368, a judgment for Eck was affirmed. Eisenkramer had permitted trash and weeds to accumulate on property adjoining Eck; such matter caught fire and destroyed Eck's barn. Of course, it was a jury question of whether Eisenkramer's act of allowing the weeds and trash to accumulate was the proximate cause of the burning of Eck's barn.

In the case at bar, a truck load of highly inflammable material was placed directly under the bridge where a carelessly dropped match or cigarette, or lightning for that matter, could set it on fire. It is conceded that the evidence is sufficient to show that appellees were negligent in leaving the hay at that point. It was a question for the jury whether such negligence was the proximate cause of the damage to the bridge.

In my opinion the trial court erred in directing a verdict for appellees. For this reason I respectfully dissent.